

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-11-00100-CR

DANIEL MARTINEZ                                                    APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

----------

### FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I.  INTRODUCTION

Appellant Daniel Martinez appeals his conviction for aggravated robbery with a deadly weapon.  In two points, Appellant argues that the evidence is insufficient to support his conviction and that the trial court erred by overruling his request for a lesser-included-offense instruction.  We will affirm.

---
[1]*See* Tex. R. App. P. 47.4.

## II. FACTUAL BACKGROUND

On the evening of December 13, 2009, Jairo Reyes was playing pool at the Rosedale Saloon in Fort Worth. He saw two women enter the bar; they stayed for about twenty or twenty-five minutes and then left. Later in the evening, Reyes's friend, who owned the bar, asked Reyes to help tend bar. Around 1:20 a.m. or 1:30 a.m. the next morning, while Reyes was tending bar, the two women returned. The women asked Reyes if he wanted to have a couple of drinks with them. Reyes suggested that he and a friend join them for drinks, but the women stated that they did not want anyone else to go along. The bar was about to close, so the women suggested they go to Reyes's house for a drink. Reyes did not want the women to know where he lived, so he suggested that they get a motel room and drink there.

Reyes and the women left the bar around 2:05 a.m. in Reyes's car. Reyes drove to a branch of Chase Bank, where he had an account, and withdrew $200 from the ATM to pay for the motel room. He then drove to a Days Inn motel that was across the street and visible from the bank.

When Reyes and the two women arrived at the motel room, Reyes and one of the women began drinking beer and watching television while the other woman stepped outside of the motel room to use Reyes's cell phone. Although the balcony door was shut, Reyes heard the woman say she was going to be late, and then she said, "Don't worry, I'm at the hotel" and gave the name and

address of the Days Inn.  The woman eventually ended the cell phone call and came back into the motel room.

Approximately one minute later, Reyes heard a knock at the door.  The woman who had used Reyes's cell phone immediately answered the door without first asking who was at the door.  Reyes saw two men standing in the doorway—Appellant, who was holding a pocket knife, and another man, who was holding a taser.

The man with the taser jumped on the bed where Reyes was sitting and used the taser to shock Reyes on his neck.[2]  Appellant held the pocket knife within two inches of Reyes's face and said, "Mother-f-----, if you scream or say something, I [sic] going to kill you."[3]  The men told Reyes to take off all of his clothes, and Reyes took off everything except his underwear and socks.  The man with the taser tied Reyes's hands and feet.  Appellant took Reyes's wallet, car keys, and some cash from Reyes's pants pocket and demanded that Reyes disclose the PIN for his ATM card.

Reyes gave Appellant his PIN, and Appellant wrote the PIN down on a blank check that Reyes had in his wallet.  Appellant told Reyes that if Reyes did not give him the correct PIN, Appellant would call the man with the taser, and

---

[2]Reyes testified that the jolt from the taser "was not that strong" and only left a mark the size of a mosquito bite.

[3]Reyes testified that the women were standing by the television and did not appear to be frightened of Appellant and the other man.

that man would kill Reyes. Appellant then put the pocket knife on a table in the motel room and left. The unidentified man with the taser picked up the pocket knife.

About three minutes after Appellant had left the motel room, the man with the taser received a call on his cell phone. He then said to the two women, "[L]et's go," and the three left the motel room. Reyes untied himself, dressed, and called 9-1-1.

While Reyes was speaking with police officers who had responded to his call, one officer saw what appeared to be Reyes's vehicle at the Chase Bank across the street from the motel. The officer drove to the bank and saw Appellant in Reyes's car in the bank's drive-through ATM lane. The police found Reyes's ATM card, receipts from the ATM, a blank check belonging to Reyes that had Reyes's ATM PIN written on it, and Reyes's driver's license in Appellant's possession.

### III.    SUFFICIENT EVIDENCE EXISTS TO SUPPORT APPELLANT'S CONVICTION FOR AGGRAVATED ROBBERY WITH A DEADLY WEAPON

In his first point, Appellant argues that the evidence is insufficient to support his conviction for aggravated assault with a deadly weapon. Appellant challenges the deadly weapon element of the offense—claiming the evidence was insufficient because no pocket knife was recovered.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to

4

determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Isassi*, 330 S.W.3d at 638. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Isassi*, 330 S.W.3d at 638.

A person commits robbery if in the course of committing theft and with intent to obtain or maintain control of the property, he intentionally, knowingly, or

5

recklessly causes bodily injury to another or intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. Tex. Penal Code Ann. § 29.02(a) (West 2011). A person commits aggravated robbery if he commits robbery and uses or exhibits a deadly weapon. *Id.* § 29.03(a)(2) (West 2011).

To establish that the defendant's use of a knife constituted the use of a deadly weapon, the State is not required to introduce the knife in evidence; a witness may establish the use of the knife as a deadly weapon by describing the knife and the manner in which it was used. *See Magana v. State*, 230 S.W.3d 411, 414 (Tex. App.—San Antonio 2007, pet. ref'd); *Billey v. State*, 895 S.W.2d 417, 420 (Tex. App.—Amarillo 1995, pet. ref'd) (citing *Morales v. State*, 633 S.W.2d 866, 868 (Tex. Crim. App. 1982)). An ordinary knife is not a deadly weapon per se; that is, it is not an object manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury. Tex. Penal Code Ann. § 1.07(a)(17)(A) (West 2011); *Tucker v. State*, 274 S.W.3d 688, 691 (Tex. Crim. App. 2008) (citing *McCain v. State*, 22 S.W.3d 497, 502–03 (Tex. Crim. App. 2000)). When a knife is alleged to have been used as a deadly weapon and no actual injury was sustained by the victim, the State must introduce evidence of other factors to establish that the knife was used as a deadly weapon. *Victor v. State*, 874 S.W.2d 748, 751–52 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). Those factors include the size, shape, and sharpness of the knife; the manner of its use or intended use; the nature or existence of inflicted wounds; evidence of

6

the knife's life-threatening capabilities; the physical proximity between the victim and the knife; and any words spoken by the one using the knife. *Id.*

Here, Reyes testified at trial that the pocket knife had a sharp blade that was approximately "three or four inches" long and had a sharp tip and that Appellant held the knife within two inches of Reyes's face while pointing the sharp end of the knife toward Reyes's face and threatening to kill him if he did not comply with Appellant's demands. Reyes further testified that he was afraid and was "[one] hundred percent" sure that the pocket knife was capable of causing him serious injury or death.

Viewing the evidence in the light most favorable to the verdict, we hold that the evidence is sufficient to permit any rational trier of fact to find that the knife—which Appellant wielded two inches from Reyes's face while threatening him with death if he did not comply with Appellant's demands—was used as a deadly weapon and was capable of causing death or serious bodily injury. *See, e.g., Magana,* 230 S.W.3d at 414 (holding evidence sufficient to prove small pocket knife not admitted in evidence was a deadly weapon when defendant inflicted superficial wounds on victim while telling her that he wished she would die and emergency room physician testified that he considered small pocket knife to be a deadly weapon capable of causing serious injury or death). We overrule Appellant's first point.

## IV.  TRIAL COURT DID NOT ERR BY OVERRULING APPELLANT'S REQUEST FOR AN INSTRUCTION ON LESSER-INCLUDED OFFENSE OF ROBBERY

In his second point, Appellant argues that the trial court erred by overruling his request for an instruction on the lesser-included offense of robbery.

We use a two-step analysis to determine whether an appellant was entitled to a lesser-included offense instruction. *Hall v. State*, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007); *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex. Crim. App.), *cert. denied*, 510 U.S. 919 (1993). First, we determine whether the lesser offense is, in fact, a lesser-included offense of the charged offense. *See* Tex. Code Crim. Proc. Ann. art. 37.09 (West 2006); *Moore v. State,* 969 S.W.2d 4, 8 (Tex. Crim. App. 1998). Second, some evidence must exist in the record that would permit a jury to rationally find that if the appellant is guilty, he is guilty only of the lesser offense. *Hall*, 225 S.W.3d at 536; *Salinas v. State*, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005); *Rousseau*, 855 S.W.2d at 672–73.

The State agrees that in the present case robbery is a lesser-included offense under the first prong of the two-pronged test set forth above. *See Little v. State*, 659 S.W.2d 425, 426 (Tex. Crim. App. 1983); *Penaloza v. State*, 349 S.W.3d 709, 711 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).

We thus next examine whether some evidence exists in the record that would permit a jury to rationally find that if Appellant is guilty, he is guilty only of the lesser offense. *See Hall*, 225 S.W.3d at 536. We evaluate the evidence in the context of the entire record; there must be some evidence from which a

rational jury could have acquitted Appellant of the greater offense while convicting him of the lesser-included offense. *See Moore*, 969 S.W.2d at 8. Neither this court nor the trial court may consider whether the lesser-included-offense evidence is credible, controverted, or in conflict with other evidence. *Id.* Anything more than a scintilla of evidence may be sufficient to have entitled the defendant to a lesser charge. *Hall*, 225 S.W.3d at 536. But a charge on the lesser-included offense is not required when the defendant presents evidence that no offense was committed and there is no evidence otherwise showing that the defendant is guilty of a lesser-included offense. *Lofton v. State*, 45 S.W.3d 649, 652 (Tex. Crim. App. 2001).

Appellant was the only defense witness. The only exhibit he offered in evidence was a picture of the Rosedale Saloon. Appellant testified that he was not involved in any robbery or aggravated robbery but rather was involved in a drug deal. According to Appellant, a drug dealer and pimp named "Indio," whom Appellant had just met, offered to pay Appellant $100 to accompany him to the Days Inn to sell drugs. Appellant testified that Indio told him that some of his "girls" were selling drugs,[4] that they had found someone who wanted to buy drugs, and that Indio needed Appellant's help to complete the drug deal.

Appellant testified that he and Indio drove to the Days Inn motel and that he never completely entered the motel room because Indio did not want him to

[4]Appellant also testified at trial that it was the women, and not the man, who were going to purchase the drugs.

9

look at the girls, who were allegedly naked. The person or people in the motel room who were purchasing the drugs did not have enough money to pay for the drugs, so Indio told Appellant to drive a car belonging to one of the women to an ATM and to use the man's ATM card to withdraw money from the ATM.

Appellant said that he drove to the ATM and withdrew $240, as instructed by Indio and was arrested there. Appellant testified that he did not have a pocket knife at any time during the transaction.

Appellant points to his testimony as entitling him to a lesser-included-offense instruction. Appellant, however, repeatedly testified that he was not involved in any robbery or in any aggravated robbery but instead was involved in a drug deal. Examining the entire record, no evidence exists from which a rational jury could have acquitted Appellant of aggravated robbery while convicting him of robbery. *See Hall*, 225 S.W.3d at 536; *Salinas*, 163 S.W.3d at 741; *Rousseau*, 855 S.W.2d at 672–73; *see also Glassey v. State*, 117 S.W.3d 424, 433–34 (Tex. App.—Fort Worth 2003, no pet.) (holding defendant charged with attempted capital murder was not entitled to lesser-included instruction on attempted murder). We overrule Appellant's second point.

## V. CONCLUSION

Having overruled Appellant's two points, we affirm the trial court's judgment.

SUE WALKER
JUSTICE

10

PANEL:  GARDNER, WALKER, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  March 29, 2012