**Affirmed and Memorandum Opinion filed April 4, 2013.**



In The

# Fourteenth Court of Appeals

## NO. 14-12-00568-CR

### NOSAKHERE ROBERT BUNDICK, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 232nd District Court
Harris County, Texas
Trial Court Cause No. 1312824**

## M E M O R A N D U M   O P I N I O N

Appellant was convicted of murder and sentenced to a term of forty years' imprisonment. In seven issues, we must decide whether the evidence is legally sufficient to support the conviction, whether the trial court abused its discretion in certain evidentiary rulings, whether improper statements were made during voir dire, and whether there was error in the jury charge. We overrule each of appellant's issues and affirm the judgment of the trial court.

## BACKGROUND

Appellant met Ferunell Smith and Rashad Minix when they were all seventh graders in middle school. The three boys were close, formed a brotherhood, and spent much of their time together after school. They grew apart in their high school years when appellant attended a different school. They became even more distant after high school when each enrolled in different colleges in different parts of the country.

The three men reunited in the spring of 2011, and according to Smith, efforts were made to reform the brotherhood and restore their friendship to what it once was. Tensions rose as Smith began to complain about certain of appellant's perceived character issues. Smith was concerned that appellant had not been performing at school or in life in general. Smith was also irritated that appellant was refusing or failing to act on promises he had made to Minix.

One evening, Smith and Minix decided to meet with appellant and discuss the problems in their relationship. They arrived at his house and called out to appellant when they saw him on the second floor balcony. Appellant walked outside with a group of three men and yelled something vulgar. Then, at a distance of less than fifty feet, appellant raised a shotgun and fired at his two former friends. Smith and Minix ran from the scene on foot, each in a different direction.

Police were soon dispatched to the area. Smith was located down the street lying between the sidewalk and curb, wounded in his leg and arm. One officer followed a blood trail to a neighboring backyard, where Minix was found in worse condition. He was shaking back and forth, and blood was coming out of his mouth. When Minix asked if he were going to die, the officer told him that he would be okay and that an ambulance was in route. Minix began to pray, "Please God, I

2

don't want to die. Please don't let me die." The officer asked Minix who did this to him. Minix replied with appellant's name, "Nosakhere."

Both victims were transported to the hospital. Minix was pronounced dead from multiple shotgun pellet wounds to the chest, hip, and extremities. Smith eventually recovered from his injuries. Shortly after the shooting, appellant surrendered himself to authorities.

## LEGAL SUFFIENCY OF THE EVIDENCE

In his first issue, appellant argues that the evidence is legally insufficient to support his conviction. When reviewing the legal sufficiency of the evidence, we examine all of the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality opinion); *Pomier v. State*, 326 S.W.3d 373, 378 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Although we consider everything presented at trial, we do not reevaluate the weight and credibility of the evidence and substitute our judgment for that of the fact finder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Because the jury is the sole judge of the credibility of witnesses and of the weight given to their testimony, any conflicts or inconsistencies in the evidence are resolved in favor of the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). Our review includes both properly and improperly admitted evidence. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We also consider both direct and circumstantial evidence, as well as any reasonable inferences that may be drawn from the evidence. *Id.*

To obtain a conviction for murder, the State was required to prove that appellant intentionally or knowingly caused the death of an individual, or intended

to cause serious bodily injury and committed an act clearly dangerous to human life that resulted in the death of an individual. *See* Tex. Penal Code § 19.02(b)(1)–(2). Appellant argues that the State failed to carry its burden because Smith gave differing accounts of the events to investigators, his testimony was contradictory, and the evidence showed only that appellant was present at the scene. We disagree.

Smith identified appellant as the shooter at trial. A responding officer also testified about his encounter with Minix and Minix's dying declaration that appellant had shot him. Based on this evidence, a rational jury could have disregarded any inconsistencies in the record and found every element of murder beyond a reasonable doubt. *See Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971) (concluding that the testimony of a single eyewitness is sufficient to support the jury's verdict).

Smith also testified that he may have witnessed muzzle fire from a second weapon, suggesting that another shooter was present at the scene. Assuming that Minix was actually killed by this other shooter, rather than by appellant, the evidence is still sufficient to support the conviction. Appellant was charged under a party theory of liability, and the testimony that he fired a shotgun supports a finding that he participated in the murder. *See* Tex. Penal Code § 7.02(a)(2) (stating that a person is criminally responsible as a party if he acts with intent to promote or assist the commission of an offense and he solicits, encourages, directs, aids, or attempts to aid the principal). Appellant's first issue is overruled.

## EVIDENTIARY RULINGS

Appellant next complains of certain evidentiary rulings. Specifically, he complains of the trial court's admission of hearsay testimony in issue two, its exclusion of character evidence in issue five, and its admission of a prison letter in issue seven.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). The trial court abuses its discretion when its decision is arbitrary, unreasonable, or without reference to guiding rules or principles. *Makeig v. State*, 802 S.W.2d 59, 62 (Tex. Crim. App. 1990). Because the trial court has no discretion in determining the applicable law, the trial court also abuses its discretion when it fails to analyze the law correctly and apply it to the facts of the case. *State v. Kurtz*, 152 S.W.3d 72, 81 (Tex. Crim. App. 2004). Under this standard, the trial court's ruling will not be disturbed unless it lies clearly outside the zone of reasonable disagreement. *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005).

## A.    Hearsay Testimony

Appellant's second issue focuses on the admission of Minix's dying declaration. Appellant seems to challenge the declaration on confrontation grounds, arguing that the admissibility of such declarations should be revisited in light of *Crawford v. Washington*, 541 U.S. 36 (2004). This argument does not comport with appellant's objection at trial, which merely disputed whether the declaration qualified under a hearsay exception. Because this issue is raised for the first time on appeal, it has not been preserved for appellate review. *See* Tex. R. App. P. 33.1; *Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005) ("An objection on hearsay does not preserve error on Confrontation Clause grounds.").

Even if error were preserved, appellant's argument is meritless. The court of criminal appeals has acknowledged, post-*Crawford*, that a dying declaration is admissible at common law even though the accused was not given an opportunity to confront. *See Gardner v. State*, 306 S.W.3d 274, 289 (Tex. Crim. App. 2009); *accord Giles v. California*, 554 U.S. 353, 358 (2008). We overrule appellant's second issue.

## B.    Character Evidence

In his fifth issue, appellant argues that the trial court abused its discretion when it excluded character testimony from his mother. The subject of her testimony focused on her relationship with Smith and his alleged propensity for bullying. Appellant's mother testified that Smith lived with her family "off and on" since middle school, and for at least a year and a half during high school. She considered Smith a son, bought him his own bed, and always fed him during his stays.

Defense counsel questioned appellant's mother whether she ever "found it necessary as a parent to intercede with respect to any disciplinary matters" between appellant and Smith. The State objected to the relevancy of this testimony. Appellant responded that the testimony was relevant because it demonstrated the nature of the relationship between the two men and it addressed a specific denial that Smith had made under oath. The trial court sustained the objection, but permitted appellant to make a bill of exceptions. During the bill, appellant's mother testified that Smith had been a bully when he was in school. She also said that he was the strongest member of his group and that he would sometimes make bad decisions like riding around in a stolen car.

Appellant argues that this character evidence was admissible because it was "clearly relevant to the jury's consideration of Mr. Smith's testimony regarding the relationship between the parties and what actions he had taken that night and his purpose for going to the defendant's residence." Assuming for the sake of argument that this evidence was relevant, the trial court's error in excluding it is subject to a harm analysis for nonconstitutional error. *See Motilla v. State*, 78 S.W.3d 352, 357 (Tex. Crim. App. 2002). Under this standard, error must be disregarded unless it affects a defendant's substantial rights. Tex. R. App. P.

6

44.2(b). An error affects a defendant's substantial rights when the error has a substantial and injurious effect or influence on the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). If the error had no or only a slight influence on the verdict, the error is harmless. *Id.* An appellate court should consider "everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case." *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). An appellate court should also consider the jury instruction given by the trial judge, the State's theory and any defensive theories, closing arguments and even voir dire, if material to appellant's claim. *Id.*

Appellant does not provide any sort of harm analysis in his brief. From our independent review of the record, we cannot conclude that the trial court's error, if any, had a substantial and injurious effect on the jury's verdict. The State made a strong case for appellant's guilt. The evidence included eyewitness testimony that appellant fired a shotgun killing the complainant. The evidence also included a dying declaration identifying appellant as the shooter.

Because appellant did not conduct his own harm analysis, it is difficult to perceive how the excluded testimony would have strengthened appellant's defense. The excluded testimony attempted to establish some history of conflict between appellant and Smith. This evidence would seem to support Smith's testimony that he and Minix went to appellant's house on the night of the shooting for purposes of reconciliation. Appellant appears to suggest the alternative: that Smith was, and still is, aggressive and provocative. Appellant briefly discusses Rule 404, which provides that character evidence may be introduced to show that the victim was the first aggressor. *See* Tex. R. Evid. 404(a)(2). But this rule applies to a defendant in a

homicide prosecution who raises the issue of self-defense. *See Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002). Appellant did not urge the issue of self-defense; his defense was that he was not the shooter based on the angle and trajectory of the shotgun pellets. Furthermore, the evidence did not show that either Smith or Minix had been carrying a weapon. Based on the record as a whole, we conclude that the trial court's error, if any, did not affect appellant's substantial rights. His fifth issue is overruled.

## C.    Prison Letter

In his seventh issue, appellant complains about the admission of a letter allegedly written by him when he was in prison. The letter, apparently addressed to a girlfriend, reflects that appellant hoped to get out of prison one day and not "commit another offense."

The letter was introduced through the testimony of a deputy sheriff who monitors the mail and communications of certain inmates. The sheriff testified that the letter was linked to appellant because it contained his name and eight-digit SPN number, a unique identification number issued to every inmate in the Harris County Jail. Appellant objected on authentication grounds, arguing that the sheriff was not a handwriting expert and he did not see appellant write the letter. Appellant also suggested that another inmate could have forged the SPN number on the envelope by copying it from appellant's wristband.

Rule 901 provides the governing rule for the authentication of evidence. Under that rule, "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." *See* Tex. R. Evid. 901(a). Evidence may be authenticated by testimony from a witness with knowledge that a matter is what it is claimed to be. *See* Tex. R. Evid. 901(b)(1).

8

Evidence may also be authenticated by "distinctive characteristics and the like," including "appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." *See* Tex. R. Evid. 901(b)(4).

The evidence supports a finding that the letter is what the proponent claimed to it be. The deputy sheriff testified that he was tasked with monitoring the mail of certain inmates in the prison, and appellant's name was placed on his watch list. The letter proffered by the sheriff contains appellant's full name in the return address section of the envelope. It also denotes appellant's SPN number, which was unique to him. The letter accordingly has certain "distinctive characteristics" linking it to appellant. It was therefore within the zone of reasonable disagreement for the trial court to believe that a reasonable juror could find that the letter was properly authenticated. *See Druery v. State*, 225 S.W.3d 491, 503 (Tex. Crim. App. 2007) (rejecting authentication challenge to a prison letter even where the evidence also showed a possibility that a person other than the purported author knew and had access to all of the author's identifying information). Appellant's seventh issue is overruled.

## VOIR DIRE

Appellant presents two separate issues based on the conduct of voir dire. In his third issue, he argues that the trial court made an unfairly prejudicial statement in front of the jury panel. In his fourth issue, he argues that the trial court erred by failing to sustain his objection to a discussion of the "one witness rule."

### A.    Prejudicial Statement

The trial court started the voir dire process with a basic discussion of the criminal law and the need to find qualified persons to serve on the jury. The court

explained the presumption of innocence and the burden of proof, and encouraged panel members to be forthcoming in their beliefs about whether they could apply such concepts fairly to the facts of the case. The court also explained that the attorneys for both sides would have an opportunity to ask questions and gather opinions. Panel members were advised that the attorneys could strike them from the jury for any reason at all, even if they were otherwise qualified.

During his examination of the panel, defense counsel asked if there were ever a situation where a member could consider two years and probation as a possible punishment in a case where a human life was taken. The State objected that the question called for an improper commitment, and the trial court instructed counsel to rephrase the question. When counsel asked to consult the court reporter, the trial judge responded, "The problem is you didn't define an offense. You didn't say a lesser included of what. You just said—if you're trying to get the juror struck for cause that's not justified." Defense counsel explained that he was not trying to strike the member for cause. He then moved for a mistrial, which the trial court denied.

Appellant argues in his third issue that the trial court's statement that he was "trying to get juror struck for cause" was unfairly prejudicial. We construe this complaint as an appeal of the trial court's denial of his motion for mistrial. We review a trial court's denial of a motion for mistrial for an abuse of discretion. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). A mistrial is only required in extreme circumstances where prejudice is incurable. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). A mistrial is a serious remedy, intended for conduct so improper and prejudicial that "expenditure of further time and expense would be wasteful and futile." *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999).

For a trial court's comments to constitute reversible error, the test is whether the comments were reasonably calculated to prejudice the rights of the accused. *See Ables v. State*, 591 S.W.2d 464, 466 (Tex. Crim. App. 1975). The comments here do not meet that standard. The trial court's statement was instructive and essentially informed counsel how to properly question the panel. There is nothing in the record to indicate that the trial court's statements were calculated to prejudice appellant's rights. The trial judge even stated in the bench conference that followed, "I don't think you were trying to do anything wrong. I just don't think that asking the question that way is going to achieve anything." Furthermore, the panel members were advised that the attorneys would be asking questions designed to determine their qualifications. Accordingly, neither defense counsel's question nor the trial court's response would have been surprising. The trial court did not abuse its discretion by denying appellant's motion. His third issue is overruled.

## B.    One Witness Rule

In his fourth issue, appellant complains about the prosecutor's discussion of the one witness rule. The prosecutor broached this subject during voir dire to determine whether any members were incapable of convicting a person based on the testimony of a single eyewitness. Appellant objected because the prosecutor failed to clarify that the jury must still believe the testimony of the eyewitness beyond a reasonable doubt. Appellant now argues that the trial court erred by failing to sustain his objection.

This argument has not been preserved for appellate review. First, appellant's objection was not timely. The record contains timestamps showing that the prosecutor discussed the one witness rule for nearly three minutes before appellant objected. Furthermore, the trial court never ruled on appellant's objection; the

prosecutor merely continued her discussion with the qualification that the members would have to believe the witness beyond a reasonable doubt. Finally, appellant's specific argument on appeal is that the prosecutor's discussion was improper because she knew that the case involved the testimony of more than one witness, but used the one witness rule "as a subterfuge to eliminate otherwise qualified jurors." This argument does not comport with his objection at trial. Any alleged error has been waived. *See* Tex. R. App. P. 33.1 (providing that an appellate complaint may be based only on an objection that was specific, timely, and ruled on by the trial court).

## JURY CHARGE

In his sixth issue, appellant argues that the trial court erred by refusing to instruct the jury on the lesser-included offense of manslaughter. We review the trial court's decision for an abuse of discretion. *Jackson v. State*, 160 S.W.3d 568, 575 (Tex. Crim. App. 2005).

A two-prong test is applied when determining whether a defendant is entitled to an instruction on a lesser-included offense. *Rousseau v. State*, 855 S.W.2d 666 672 (Tex. Crim. App. 1993); *Royster v. State*, 622 S.W.2d 442, 444 (Tex. Crim. App. 1981); *Penaloza v. State*, 349 S.W.3d 709, 711 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). First, the lesser-included offense must be included within the proof necessary to establish the charged offense. *See* Tex. Code Crim. Proc. art. 37.09; *Flores v. State*, 245 S.W.3d 432, 439 (Tex. Crim. App. 2008). Second, some evidence must exist in the record that would permit a jury to rationally find that if the defendant is guilty, he is guilty of only the lesser-included offense. *Aguilar v. State*, 682 S.W.2d 556, 558 (Tex. Crim. App. 1985). Courts have recognized that manslaughter is a lesser-included offense of murder. *See, e.g.*, *Cardenas v. State*, 30 S.W.3d 384, 392 (Tex. Crim. App. 2000). Thus, the

12

first prong is satisfied. The only remaining question is whether there was some evidence presented from which a jury could rationally find that appellant was guilty of manslaughter but not guilty of murder.

Anything more than a scintilla of evidence is sufficient to entitle a defendant to a charge on the lesser-included offense. *Dobbins v. State*, 228 S.W.3d 761, 768 (Tex. App.—Houston [14th Dist.] 2007, pet. dism'd). We do not consider the weight or credibility of the evidence, or whether it conflicts with other evidence. *Saunders v. State*, 840 S.W.2d 390, 391 (Tex. Crim. App. 1992) (per curiam). Regardless of its strength or weakness, if the evidence establishes the lesser-included offense as a "valid, rational alternative to the charged offense," then the charge must be given. *Forest v. State*, 989 S.W.2d 365, 367 (Tex. Crim. App. 1999); *Bignall v. State*, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994).

A person commits manslaughter if he recklessly causes the death of an individual. Tex. Penal Code § 19.04. A person acts recklessly if he engages in conduct and is aware of but consciously disregards a substantial and unjustifiable risk associated with that conduct. *Id.* § 6.03(c). "If a deadly weapon is used in a deadly manner, the inference is almost conclusive that [the defendant] intended to kill." *Godsey v. State*, 719 S.W.2d 578, 581 (Tex. Crim. App. 1986). Typically, a manslaughter instruction will be required only when there is evidence that the defendant intended merely to frighten the complainant and his weapon accidentally discharged. *See, e.g.*, *Trujillo v. State*, 227 S.W.3d 164, 167–68 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd).

The record in this case does not support a charge of manslaughter. Appellant cites no evidence of recklessness, and there is nothing to suggest that the shooting was accidental. The trial court did not abuse its discretion by refusing the manslaughter instruction. Appellant's sixth issue is overruled.

## CONCLUSION

The judgment of the trial court is affirmed.


/s/    Adele Hedges
Chief Justice


Panel consists of Chief Justice Hedges and Justices Boyce and Donovan.

Do Not Publish — Tex. R. App. P. 47.2(b).